## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MUROOJ ALSHAWY,** *Plaintiff*, v. **U.S. CITIZENSHIP AND IMMIGRATION SERVICES,** *et al.*, *Defendants*. | Civil Action No. 21-2206 (FYP) |

### MEMORANDUM OPINION

Plaintiff Murooj Alshawy is an American citizen who wishes to bring her mother to the United States from Iraq. The process of obtaining a visa, however, has been stalled for over two years, prompting Alshawy to file this lawsuit against various government agencies and officials whom she believes are responsible for the delay. Alshawy asserts that Defendants' failure to promptly process her visa petition violates the Administrative Procedure Act ("APA") and the Due Process Clause. Alshawy also claims that a policy employed by the government to process visas, known as the Controlled Application Review and Resolution Program ("CARRP"), violates the Immigration and Nationality Act ("INA"), the Constitution, and the APA. Defendants now move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court concludes that Alshawy is not entitled to the relief that she seeks and therefore will grant Defendants' Motion to Dismiss.

### BACKGROUND

On February 1, 2019, Alshawy submitted a visa petition to the United States Citizenship and Immigration Services ("USCIS"), seeking authorization for her mother, Iman Abd Ali

Mohammed Al Saadi, to enter the United States from Iraq.  *See* ECF No. 1 (Complaint), ¶ 15.  To obtain an immigrant visa for her parent, a citizen child must submit a Form I-130 and provide evidence of a bona fide parental relationship.  *See* 8 C.F.R. §§ 204.1(a)(1), 204.2(f).  Alshawy submitted the requisite I-130, along with all applicable filings and fees.  *See* Compl., ¶¶ 15–16.  USCIS approved Alshawy's I-130 in September 2019 and sent the visa application to the State Department's National Visa Center ("NVC") for further processing.  *Id.*, ¶¶ 17–18.

Although Plaintiff's visa application technically remains with the NVC, the next step of the process is an interview with a consular official at the United States Embassy in Doha, Qatar ("Embassy").  In February 2020, Alshawy's visa application was sent to the Embassy in Qatar.[1]  *Id.*, ¶ 19.  Shortly thereafter, however, the COVID-19 global pandemic "significantly disrupted the State Department's ability to interview applicants and issue visas on a worldwide basis."  *See* ECF No. 7 (Defendants' Motion to Dismiss) at 3.  In March 2020, the State Department suspended visa services around the world.  *Id.*  The agency has since resumed some activities, offering visa services "on a post-by-post basis, consistent with State Department guidance for safely returning . . . consular officials and diplomats to work based on COVID-19 conditions where each post is located."  *Id.* (citing *Visa Services Operating Status Update*, Dep't of State (Nov. 19, 2021), https://travel.state.gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html).  Visa services in Doha are still limited due to the COVID-19 restrictions currently in place.  *Id.* (citing *COVID-19 Information*, U.S. Embassy in Qatar (last updated Feb. 27, 2022), https://qa.usembassy.gov/covid-19-information-11).  As a result, Alshawy's petition remains pending at the Embassy in Qatar.  *See* Compl., ¶¶ 19–20.

---

[1]     The Complaint states that NVC initially forwarded the application to the U.S. Consulate in Baghdad, Iraq, and later transferred it to the Embassy in Doha, Qatar.  *See* Compl, ¶¶ 18–19.

Defendants note that the delays in processing visas due to the COVID-19 pandemic are a world-wide phenomenon: "[A]pproximately 75,000 immigrant visa cases were pending at the NVC in January 2020, compared to 473,000 pending as of February 2021." Defs. Mot. at 4 (citing *Update on U.S. Immigrant Visa Processing*, Dep't of State, (Mar. 9, 2021) https://www.state.gov/briefings-foreign-press-centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates).

Alshawy "repeated[ly]"attempted to advance her visa application, but to no avail. *See* Compl, ¶ 20. After eighteen months of waiting for the Embassy to process the application, Alshawy filed suit on August 18, 2021. *Id.*, ¶ 19; *id.* at ECF p. 9. In her Complaint, she named as defendants USCIS, USCIS Director Ur Jaddou, the Department of State, Secretary of State Antony Blinken, the U.S. Embassy in Qatar, and the U.S. Ambassador to Qatar, John Desrocher. *Id.*, ¶¶ 3–8. The Complaint alleges that Defendants' delay in processing the visa is unreasonable under the APA, *id.*, ¶¶ 22–23, 33, and unconstitutional under the Due Process Clause of the Fifth Amendment, *id.*, ¶¶ 37–38. Alshawy also asserts that USCIS used CARRP, a policy for adjudicating immigration cases with national-security concerns, to improperly deny visa petitions, in violation of the INA. *Id.*, ¶ 29. As relief, Alshawy requests that this Court: (1) issue a writ of mandamus compelling Defendants to complete all administrative processing of Alshawy's application within 60 days, issue a visa to Al Saadi, and explain the reason for the delay; (2) find CARRP unconstitutional and enjoin Defendants and their employees from employing that policy; and (3) take jurisdiction and adjudicate Alshawy's petition pursuant to the Court's declaratory-judgment authority. *Id.* at ECF pp. 8–9. Defendants now move to dismiss. *See generally* Defs. Mot.

3

**LEGAL STANDARD**

**I.       Subject-Matter Jurisdiction**

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate by a preponderance of the evidence that the court has subject-matter jurisdiction to hear her claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). As a result, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (cleaned up).

A federal court lacks jurisdiction if the plaintiff does not establish standing. *See Lujan*, 504 U.S. at 561 (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing the [three] elements" of standing (citation omitted)). Indeed, "a showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560). The elements relevant to standing are injury in fact, causation (traceability), and redressability. First, the plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). Second, there must be traceable causation from a defendant's alleged action to a plaintiff's injury. *See id.*; *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 ("Causation

may thus be said to focus on whether a particular party is appropriate."). Third, the plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted); *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." (footnote omitted)). A plaintiff must establish injury in fact, causation, and redressability separately for each defendant. *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 205 (D.D.C. 2021) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)).

## II.     Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor, "treat[ing] the complaint's factual allegations as true" and granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *accord Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

Defendants move to dismiss on several grounds. They first assert that because Alshawy has named some defendants who cannot provide the relief that she requests, the claims against those defendants must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *See* Defs. Mot. at 5–6. Defendants also move to dismiss Plaintiff's claims under the APA and the Due Process Clause, pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* at 6, 15, 17. The Court will address each argument in turn.

## I. Appropriate Defendants

Defendants argue that the claims against USCIS and Director Jaddou should be dismissed for lack of standing because those two defendants have "completed their role in the process." *See* Defs. Mot. at 5–6.[2] The Court agrees that USCIS and Director Jaddou are not proper defendants in this case because USCIS is not involved in the remaining steps of processing Alshawy's visa petition: That agency therefore cannot provide her any remedy. As Alshawy acknowledges, USCIS processed Alshawy's I-130 over two years ago and then sent her visa application to the State Department for further processing. *See id.*, ¶¶ 17–19.[3] At this point,

---

[2] Defendants also argue that claims against the Department of Homeland Security ("DHS") should be dismissed because the agency either had "no role in adjudicating the request for a visa or [it] completed [its] role in the process." *See* Defs. Mot. at 5. Plaintiff did not, however, name DHS as a defendant in this case. *See* Compl., ¶¶ 3–8.

[3] "After USCIS approves [the] petition, they will transfer [the] case to the Department of State's National Visa Center (NVC) for pre-processing." *Immigrant Visa Processing*, Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html. The Court may take judicial notice of information on official government websites without transforming the motion into one for summary judgment. *Dastagir v. Blinken*, No. 20-cv-2286, 2021 WL 2894645, at *1 n.3 (D.D.C. July 9, 2021); *Pharm. Rsch. & Mfrs. of Am. v. DHHS*, 43 F. Supp. 3d

Plaintiff's petition awaits action by the Embassy in Qatar. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999) ("The INA confers upon consular officers exclusive authority to review applications for visas . . . ."). Because USCIS cannot provide any relief that will "alleviate the particularized injury alleged," *Fla. Audubon Soc.*, 94 F.3d at 663–64, USCIS and its director are not properly named as defendants here. *See Whitlock v. U.S. Dep't of Homeland Sec.*, No. 21-cv-807, 2022 WL 424983, at *3 (D.D.C. Feb. 11, 2022) (finding that lack of standing barred the plaintiff from suing DHS because the plaintiff did not support his assertion that DHS actually participated in the delay of the visa application). The Court therefore will dismiss the claims against USCIS and Director Jaddou.

Alshawy argues that her claims against USCIS are viable because she seeks "damages pursuant to the Equal Access to Justice Act," and "damage claims cannot become moot." *Id.* at 8. But Alshawy "argues the wrong doctrine." *Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *4 (D.D.C. July 29, 2020). As the Supreme Court has explained, "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The jurisdictional problem here is not that Alshawy's claims against USCIS have disappeared over the course of the litigation (*i.e.*, became moot). Rather, it is that from the moment Alshawy filed suit, there was no live case or controversy against the agency, meaning that Plaintiff lacks standing.

---

28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").

To the extent that Alshawy argues her injury can be redressed with "damages pursuant to the Equal Access to Justice Act," her argument falls short. The Equal Access to Justice Act provides only for attorney's fees and costs. *See Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-cv-893, 2022 WL 424967, at *3 (D.D.C. Feb. 11, 2022) (citing 28 U.S.C. § 2412). "[F]ees and costs are not damages, and 'an interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" *Id.* (alterations in original) (quoting *Liu v. INS*, 274 F.3d 533, 536 (D.C. Cir. 2001)); *accord Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 637 (D.C. Cir. 2000). None of Plaintiff's claims "support[] a claim for money damages," and the Court cannot order USCIS to provide relief to Plaintiff because there is nothing left for that agency to do. *See Ahmed*, 2022 WL 424967, at *3 ("The APA by its terms waives sovereign immunity only for 'relief other than money damages.' And there is no cause of action for money damages against the United States for its agencies under the Due Process Clause." (quoting 5 U.S.C. § 702)). Because Alshawy's claims are not redressable by USCIS, she lacks standing to sue USCIS and Director Jaddou. *See Garcia v. Stewart*, 531 F. Supp. 3d at 205; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 335.

Alshawy attempts to establish redressability by arguing that she can obtain relief if she receives a declaratory judgment that "CARRP violates the INA," or if the Court rescinds CARRP. *See* ECF No. 8 (Plaintiff's Opposition) at 8. Under CARRP, USCIS screens for factors that may indicate a national security concern; and may conduct a more thorough review of applications that raise such concerns. *Policy for Vetting and Adjudicating Cases with National Security Concerns*, U.S. Citizenship and Immigration Servs. (Apr. 11, 2008),

8

https://www.uscis.gov/sites/default/files/document/foia/CARRP_Guidance.pdf.[4]

As an initial matter, and as previously discussed, USCIS has completed its processing of Plaintiff's visa application, and that agency's adoption and use of CARRP therefore is not relevant to Plaintiff's claim of undue delay. *See Whitlock*, 2022 WL 424983, at *3 (finding lack of standing for the plaintiff to sue DHS because "DHS completed its role in processing [the plaintiff's visa] application"); *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 (finding that the plaintiffs lacked standing where their claims were based "on a lengthy chain of conjecture" rather than showing a clear line between the defendant's actions and the plaintiff's injuries). Moreover, publicly available USCIS documents suggest that the agency does not use CARRP to process Form I-130s. *See Policy for Vetting and Adjudicating Cases with National Security Concerns* at 1 n.4 ("This policy does not apply to petitions that do not convey immigrant or non-immigrant status."); *see also I-130, Petition for Alien Relative*, U.S. Citizenship and Immigration Servs. (Mar. 23, 2022), https://www.uscis.gov/i-130 ("The filing or approval of [a Form I-130] does not give your relative any immigration status or benefit."). In any event, Plaintiff's CARRP-related claims in this case appear to be entirely speculative: Alshawy alleges that "Defendants are intentionally delaying a response . . . to Iman Abd Ali Mohammed Alshawy's visa application pursuant to the CARRP program," basing that claim only "[o]n information and belief." *See* Compl., ¶ 27. Such vague and conclusory allegations, devoid of any facts, do not support an inference that CARRP was applied in processing Plaintiff's visa application. With nothing more than Plaintiff's speculation that CARRP contributed to the delay that she is

---

[4]    The Court may take judicial notice of information on official government websites without transforming the motion into one for summary judgment. *Dastagir*, 2021 WL 2894645, at *1 n.3; *Pharm. Rsch. & Mfrs. of Am.*, 43 F. Supp. 3d at 33.

experiencing, *see Twombly*, 550 U.S. at 555, Alshawy lacks standing to challenge CARRP because she cannot demonstrate that she has "suffered an injury-in-fact as a result of the policy." *Ghadami*, 2020 WL 1308376, at *6 n.4; *see also Ahmed*, 2022 WL 424967, at *2–4 (holding that the plaintiff lacked standing to pursue a claim based on CARRP because he could not demonstrate injury in fact, as the policy is not used for I-130s); *accord Dastagir v. Blinken*, No. 20-cv-2286, 2021 WL 2894645, at *1 n.7 (D.D.C. July 9, 2021); *Lujan*, 504 U.S. at 560. Accordingly, the Court will grant Defendants' Motion to Dismiss all claims against USCIS and Director Jaddou.

## II.     APA Claim

Defendants next argue that Alshawy fails to state a cognizable claim under the APA. *See* Defs. Mot. at 6 (citing 5 U.S.C. § 706(1)). Alshawy alleges that Defendants' delay in processing her visa application violates the APA's requirement that agencies "conclude" matters presented to them "[w]ith due regard for the convenience and necessity of the parties . . . and within a reasonable time." *See* Compl., ¶¶ 22–25, 33 (citing 5 U.S.C. § 555(b)). When an agency fails to comply with this requirement, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 93 (D.D.C. 2020).

In *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984), the D.C. Circuit provided "useful guidance" for assessing claims of unreasonable agency delay, noting the following considerations:

> (1)     the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80.  Courts in this jurisdiction have applied these so-called "*TRAC* factors" in numerous cases involving delayed processing of visas.  *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (applying *TRAC* factors at motion-to-dismiss stage to determine if an employment-based immigrant visa application was unreasonably delayed); *see also Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (collecting cases). Here, application of the *TRAC* factors leads the Court to conclude that the delay in processing Alshawy's application is not unreasonable as a matter of law.

    1.    *TRAC* Factors One and Two

The first two *TRAC* factors — focusing on the reasonableness of the delay and whether Congress has set a timeline for completion of the action in question — favor Defendants. Congress has not set any statutory deadline for the processing of visas; "[t]o the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (citing *Arpaio v. Obama,* 797 F.3d 11, 16

(D.C. Cir. 2015)).  Congress granted the State Department the authority to process visa applications in broad terms, specifically omitting "substantive standards against which the Secretary's determination could be measured." *Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).

In cases like this where there is no "congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak*, 2020 WL 3082018, at *6.  While there is no bright-line rule in this realm, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (citation omitted) (collecting cases).  Indeed, many courts have "declined to find a two-year period to be unreasonable as a matter of law," particularly when the agency has given a reasonable explanation for the delay and "regularly revisit[s] the question" of whether they can proceed with visa processing.  *Ghadami*, 2020 WL 1308376, at *8 (collecting cases); *Skalka*, 246 F. Supp. 3d at 154 (collecting cases).

Here, the relevant period of delay is approximately eighteen months — a period calculated from the earliest possible time that the Embassy could have scheduled the interview.[5] Although Plaintiff relies on several cases to support her argument that this eighteen-month delay is unreasonable, she cites only out-of-circuit opinions that predate the COVID-19 pandemic. *See* Pl. Opp. at 10.  In so doing, she ignores the "abundance of case law within this district finding delays longer than two years not unreasonable."  *Mahmood v. U.S. Dep't of Homeland Sec.*, No.

---

[5]     The Court acknowledges that more time has passed since Plaintiff filed this case.  Alshawy and her mother have now waited approximately two years for an interview.  But even a two-year delay does not constitute an unreasonable delay under the applicable case law.  *Zandieh*, 2020 WL 4346915, at *6 ("In fact, several of the district's courts have noted that delays between three to five years are 'often not unreasonable.'" (quoting *Sarlak*, 2020 WL 3082018, at *6)).

21-cv-1262, 2021 WL 5998385, at *8 (D.D.C. Dec. 20, 2021); *see also Bagherian*, 442 F. Supp. at 94 (finding twenty-eight-month delay to be reasonable); *Pourshakouri v. Pompeo*, No. 20-cv-00402, 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months reasonable); *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021) (concluding that twenty-seven month delay is not unreasonable); *Ghadami*, 2020 WL 1308376, at *8 (finding delay of twenty-five months to be reasonable).  Delays between three to five years *under normal circumstances* are "often not unreasonable."  *Sarlak*, 2020 WL 3082018, at *6.

Defendants attribute the delay in processing Alshawy's petition to the "extraordinary backlog[s]" caused by "the 'Secretary of State's decision to reduce consular processing [in order to] protect the health of consular officers and the public' in light of the COVID-19 pandemic." *See* Defs. Mot. at 11; *id.* at 10 (quoting *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021)).  An eighteen-month delay during a global pandemic is not "so egregious as to warrant mandamus."  *In re Core Commc'ns., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79).  The COVID-19 pandemic "significantly disrupted the State Department's ability to interview applicants and issue visas on a worldwide basis."  *See* Defs. Mot. at 3.  As another court in this District recently held, "[i]ssues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess." *Dastagir v. Blinken*, No. 20-cv-2286, 2021 WL 2894645, at *5 (D.D.C. July 9, 2021).  Given the complications of the pandemic and the reasonableness of an eighteen-month delay, the Court finds that the first two factors favor Defendants. *See, e.g.*, *Mahmood*, 2021 WL 5998385, at *7–8.

2.  *TRAC* Factors Three and Five

The third and fifth *TRAC* factors also favor Defendants. These factors "overlap," as the effects of delay on "human health and welfare" and "the interests prejudiced by delay" share commonalities. *See TRAC*, 750 F.2d at 80. "Welfare" generally involves a "significant risk of material impairment," where there is current and actual danger to the health of the individual and "the health of their progeny." *In re United Mine Workers Int'l Union*, 190 F.3d 545, 563 (D.C. Cir. 1999) (assessing welfare by examining whether the regulatory scheme was "negatively impacting a significant risk of material impairment"); *see also Oil, Chemical and Atomic Workers Intern. Union v. Zegeer*, 768 F.2d 1480, 1487–88 (D.C. Cir. 1985) (discussing "human life and health" when examining the third *TRAC* factor regarding human health and welfare). Merely stating that a delay will negatively impact the life of the applicant is insufficient to establish that these factors favor a plaintiff. *Palakuru*, 521 F. Supp. 3d at 53 (finding the third and fifth *TRAC* factors to weigh in favor of the defendants when the plaintiff only asserted that the delay put "his life 'and the lives of his family members . . . on hold'"); *see also Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 102 (D.D.C. 2021) (finding the third and fifth *TRAC* factors to favor the defendants even when the plaintiff alleged that the delay caused him and his family "significant financial, economic, and personal hardships").

Here, Alshawy alleges nothing more than that the delay in processing her visa application is unreasonable. *See* Compl., ¶¶ 21–35; *see* Pl. Opp. at 11–12. While Alshawy's situation is unfortunate, she does not allege any effects on her health or physical welfare, or on that of her mother. *See* Compl., ¶¶ 21–35; *see* Pl. Opp. at 11–12. By contrast, Defendants represent that the delay in processing visas worldwide, including Alshawy's application, is attributable to the

14

government's efforts to protect the health and safety of consular and diplomatic officials during the COVID-19 pandemic.  See Defs. Mot. at 13–14.  Therefore, the third and fifth *TRAC* factors weigh in favor of Defendants.

       3.       *TRAC* Factor Four

The fourth *TRAC* factor requires an assessment of the impact that expediting the delayed action would have on other agency priorities — a consideration that firmly tips the scales toward Defendants.  The D.C. Circuit has found intervention unwarranted where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain" — even when all the other *TRAC* factors would support granting relief.  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations in original) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  Judicial intervention would create just that scenario here.  Although Alshawy contends that she should not be individually penalized for delays caused by the pandemic, the relief she requests "would simply 'reorder' a queue of applicants seeking adjudication," *Tate*, 513 F. Supp. 3d at 149, during a time of "'competing priorities' for limited resources," *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1101.  Indeed, other applicants in the queue may face more significant hardships due to the State Department's delays, and there is no net gain in prioritizing Alshawy at their expense.  As noted, the contrary authorities on which Alshawy relies are out-of-circuit opinions that do not consider the current stress and backlogs caused by the pandemic.  See Pl. Opp. at 11.  Accordingly, the fourth *TRAC* factor heavily favors Defendants.

### 4. *TRAC* Factor Six

The last *TRAC* factor favors neither party. Alshawy does not allege any impropriety in the government's actions beyond the delay itself, *see* Pl. Opp. at 12, but the D.C. Circuit has instructed that a "court need not 'find any impropriety'" to hold that a delay has been unreasonable. *TRAC*, 750 F.2d at 80. Alshawy's lack of such allegations "does not count against [her] here." *See Ghadami*, 2020 WL 1308376, at *9.

*   *   *

Considering all six *TRAC* factors together, the Court concludes that Alshawy has not stated a claim of unreasonable delay under the APA. Under current circumstances, Defendants' interest in balancing agency priorities outweighs Alshawy's interest in her mother promptly entering the country. *See Sarlak*, 2020 WL 3082018, at *6. Even treating all of Alshawy's allegations as true and drawing all inferences in her favor, a delay of eighteen months in scheduling the visa interview is not unreasonable. Alshawy's APA claim, therefore, must be dismissed.

## III. Due Process Claim

Finally, Defendants argue that Alshawy has failed to state a constitutional claim under the Due Process Clause of the Fifth Amendment. *See* Defs. Mot. at 15. Alshawy asserts that her right to "fundamental fairness in administrative adjudication" was violated by Defendants' failure "to provide a reasonable and just framework of adjudication." *See* Compl., ¶¶ 37–39; *see* Pl. Opp. at 12.[6] The Court agrees with Defendants.

---

[6] Alshawy did not specify in her Complaint whether she was alleging a substantive or a procedural due process claim. *See generally* Compl. After Defendants addressed both in their Motion, Alshawy responded to only the procedural due process claim in her Opposition. *See* Pl. Opp. at 12 (stating only that Defendants' actions

16

To state a violation of due process, a plaintiff must allege a deprivation of her life, liberty, or property by the government. *See, e.g.*, *Kerry v. Din*, 576 U.S. 86, 90 (2015) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)). If the Court determines that the plaintiff was not denied an interest in her life, liberty, or property, then her claim must be dismissed. *Id.* Thus, the first step in any due process claim is for the Court to consider whether the stated liberty interest is one that warrants constitutional protection. *See id.*; *see also Schwartz v. U.S. Dep't of Homeland Sec.*, No. 21-cv-378, 2021 WL 4133618, at *4 (D.D.C. Sept. 10, 2021) ("As Defendants note, it is not clear precisely what version of a due-process claim Plaintiff seeks to bring [*i.e.*, substantive or procedural], but a necessary component is a protected liberty or property interest of which plaintiff has been deprived." (cleaned up)).

Here, although Plaintiff does enjoy a liberty interest in her "personal choice in matters of marriage and family life," that interest is not implicated by the facts alleged in the Complaint. *Singh v. Tillerson*, 271 F. Supp. 3d 64, 71 (D.D.C. 2017) (citing *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974)) (finding no due process protection for a legal permanent resident when his wife and children were denied entry into the United States); *Kerry*, 576 U.S. at 101 (finding no due process protection for a citizen seeking to bring her non-citizen spouse into the United States). At bottom, adult citizen children do not have a constitutionally protected liberty interest in bringing their noncitizen parents into the United States. *See Zandieh*, 2020 WL 4346915, at *7–8 (dismissing a citizen child's constitutional claim when her noncitizen parents were denied entry into United States); *see also Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 104–

---

violated "the procedural due process guarantee"). Because Alshawy did not address the substantive due process claim in her Opposition, the Court will treat any such claim as conceded. *See New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 24 (D.D.C. 2014) (treating claims "Plaintiffs never addressed" as conceded).

05 (D.D.C. 2011) ("[T]he applicant's daughter's interest in maintaining a relationship with her [mother] in the United States is . . . not a recognized protected constitutional interest").  Because Alshawy does not assert "a liberty interest protected by the Constitution," her procedural due process claim must be dismissed.  *See Kerry*, 576 U.S. at 90.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order will issue this day.

_____
FLORENCE Y. PAN
United States District Judge

Date:   March 30, 2022